UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNETTE SAMS-SCHWARTZ,

      Plaintiff,      CIVIL ACTION NO. 10-cv-12619

vs.

                       DISTRICT JUDGE PATRICK J. DUGGAN

COMMISSIONER OF      MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.** **RECOMMENDATION:** This Court recommends that Plaintiff's Motion for Summary Judgment (docket nos. 10, 14) be DENIED, Defendant's Motion For Summary Judgment (docket nos. 13, 15) be GRANTED and the instant Complaint dismissed.

\*\*\*

**II.** **PROCEDURAL HISTORY:**

Plaintiff filed an application for disability and Disability Insurance Benefits with a protective filing date of July 5, 2007 alleging that she had been disabled since September 1, 2005 due to schizophrenia, depression, alcoholism, anxiety and shaking. (TR 81-83, 108). The Social Security Administration denied benefits. (TR 56-61). Administrative Law Judge Henry Perez Jr. (ALJ) held a de novo hearing on May 13, 2009 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because she was not under a disability within the meaning of the Social Security Act at any time from September 1, 2005 through the date of the ALJ's July 6, 2009 decision. (TR 23-31). The Appeals Council declined to review the ALJ's

decision and Plaintiff commenced the instant action for judicial review. (TR 1-5). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III.	TESTIMONY AND RECORD EVIDENCE

Plaintiff was 43 years old on the date of the hearing. (TR 43). Plaintiff has a high school education and past work experience as a waitress, cashier and factory laborer. (TR 43). Plaintiff stopped working in September 2005 after she was "declining," having panic attacks, having trouble sleeping and was hospitalized. (TR 43-44). The record shows that Plaintiff was taken to the emergency room on September 23, 2005 after what appeared to be a suicide attempt. (TR 159-62). Plaintiff denied that she was suicidal and the issue remained undetermined as of her discharge. (TR 160). Plaintiff testified that she was using alcohol in 2005 and in June 2006 she took Antabuse which helped her "a lot." (TR 44). In March 2006 Plaintiff was admitted to the emergency room for ethanol intoxication, an acute confused state, an acute closed head injury and a facial contusion. (TR 164-67). It was reported that Plaintiff was "vulgar" with the staff and tried to hit and bite them. (TR 164). Plaintiff testified that she attends Alcoholics Anonymous and that she stopped drinking in December 2006 and has had a "couple slip ups." (TR 44-45, 51-52). In January 2007 Plaintiff's father petitioned that she be admitted to inpatient treatment due to not taking her medications, drinking and being suicidal. (TR 277, 289). During the relevant period, Plaintiff has obtained outpatient treatment at Macomb Community Mental Health and Oakland Psychological Clinic. (TR 45, 49, 171-84, 220-317).

Plaintiff testified that she has been taking medication since 2006. Her medications at the time of the hearing included trazodone, Lexapro, oxcarbazepine, Seroquel and BuSpar. (TR 45). She testified that her husband organizes her medication for her because she gets confused about

which ones to take and when. (TR 45). Plaintiff reported that she does not need reminders to take care of her personal needs and grooming. (TR 101). Plaintiff is able to perform laundry, cooking and cleaning tasks but needs a list of things to do. (TR 101). Plaintiff is able to shop and attend church. (TR 102-03).

Plaintiff testified that her medications "definitely" help her depression and anxiety and they keep her calmer, although she continues to have panic attacks when she gets into a vehicle and at other times when she gets nervous. (TR 46). She fears walking over bridges and driving in a car. (TR 105). She does not drive a car and riding in a car makes her feel "freaked out" because she thinks she is going to get hit by a car. (TR 48). Plaintiff testified that she still has nightmares, and she used to hear voices before she was on medication but the medication has given her some "stability." (TR 50). Plaintiff's depression causes crying spells approximately twice a week for fifteen to twenty minutes before she falls asleep and her depression makes her feel sad about once a day. (TR 47, 51).

Plaintiff testified that her medications make her extremely tired. She testified that her abilities to concentrate and focus are limited. (TR 47). For example, she will start doing laundry, then let the dog out and forget about the laundry. (TR 47). Plaintiff testified that during the day she plays with the dog and watches television but she does not always focus on television. She also lays down during the day. Plaintiff got married in the interim between filing her claim and the hearing. (TR 42). Plaintiff testified that she does not have anything wrong physically. (TR 52).

The administration interviewer indicated that in a face to face interview, Plaintiff had difficulty with understanding, coherency, talking and answering and noted that Plaintiff "could not stop moving throughout the entire interview," she scratched at her legs, neck and arms and rubbed them constantly, wrung her hands and moved them "all over," stuttered severely at times, "burst into

3

tears our of nowhere," appeared to be talking to people who were not there at several points in the interview and was "unable to stay and file an SSI claim because of her emotional status." (TR 118).

The Vocational Expert (VE) testified that Plaintiff's past work as a caregiver, as a factory inspector and as a waitress was unskilled and medium exertion. (TR 54). The ALJ asked the VE to consider an individual of Plaintiff's age, education and work experience with no exertional limitations but further limited to jobs that provide for routine production and stress, simple job assignments, occasional contact with the public and jobs that allow little or no change in the work setting. (TR 54). The VE testified that such an individual would be able to perform Plaintiff's past work as a factory inspector. (TR 54).

The VE testified that if Plaintiff's symptoms were credible there would not be any jobs she could perform due to the frequency and severity of her panic attacks, depressive episodes, deficits in focus and concentration and fatigue requiring her to lay down periodically during the day. (TR 54). The VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles (DOT). (TR 54).

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the insured status requirements through June 30, 2009, had not engaged in substantial gainful activity since September 1, 2005, the alleged onset date, and suffers from depression, anxiety and a history of alcohol abuse, she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 25). The ALJ found that Plaintiff had the residual functional capacity to perform a full range of unskilled work at all exertional levels but limited by non-exertional limitations to routine production and stress, simple job assignments, only occasional contact with the public and little to no changes in the work setting. (TR 26). The ALJ found that Plaintiff is able to perform her past relevant work as a factory

4

inspector and therefore she is not suffering from a disability under the Social Security Act. (TR 30).

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

Plaintiff's Social Security disability determination was made in accordance with the first four

steps of the five step sequential analysis set forth in 20 C.F.R. section 404.1520(a)-(g). At step four, the ALJ determined that Plaintiff can perform her past relevant work and is not disabled. The Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence, the ALJ did not properly weigh the consultative examiner's opinion and the RFC and resulting hypothetical question to the VE did not adequately address Plaintiff's mental limitations.

  **B.**  **Discussion and Analysis**

The Court has reviewed the record in full and substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff has the RFC to perform unskilled work at all exertional levels limited to routine production and stress, simple job assignments and only occasional contact with the public with little to no changes in the work setting.

Plaintiff argues that the ALJ "discounted" the consultative examiner's report and opinion and gave the assessment and GAF score "reduced weight." (Docket no. 10 p. 16). Despite Defendant pointing out that Plaintiff has raised this issue in a perfunctory manner, without sufficient development, the Court finds the issue worth addressing. Plaintiff underwent a consultative psychological examination with Shelley Galasso Bonanno, M.A., L.L.P., on September 27, 2006. Ms. Bonanno diagnosed Mood Disorder (296.90) and alcohol dependence (303.90) in full early remission and assigned a GAF of 44. (TR 195-201). The doctor concluded that Plaintiff's prognosis is "guarded." (TR 200). While the ALJ is required to evaluate every medical opinion of record, Ms. Bonanno is not entitled to the kind of controlling weight afforded a treating source. 20 C.F.R. § 404.1527(b), (d). This is not an instance where the ALJ failed to evaluate this evidence. On the contrary, the ALJ expressly addressed Ms. Bonanno's opinions in the decision and properly explained his decision to give reduced weight to the GAF assigned by Ms. Bonanno in September 2006. (TR 29).

The ALJ pointed out that although a GAF score less than 50 can indicate serious symptoms or impairment in social and occupational functioning, it was also based upon a one-time visit and observation of Plaintiff and was a general characterization of Plaintiff's mental health at that point in time. (TR 29). The ALJ correctly points out that a GAF score is not raw medical data. (TR 29). *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 502 n.7 (6th Cir. 2006) ("A GAF score may help an ALJ assess mental RFC, but it is not raw medical data.").

Plaintiff also argues that the ALJ discounted Plaintiff's testimony and did not properly assess her complaints, limitations and credibility. (Docket no. 10 p. 16). The ALJ found inconsistencies in Plaintiff's statements in the record and her testimony. (TR 28-29). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence and contain specific reasons for the weight the adjudicator assigned to the individual's statements. *See id.*; SSR 96-7p.

To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. § 404.1529(c)(2), (3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

Plaintiff argues that the ALJ improperly used her ability to ride a bus to discount her testimony about problems she has driving a car. (Docket no. 10 p. 16). The ALJ's statement on which Plaintiff relies is the following: "[A]lthough Claimant reported extreme difficulty driving due to anxiety, consultative examination notes indicated that she took a bus to her appointment and noted that her license was revoked." (TR 28). Contrary to Plaintiff's allegation, the ALJ has not concluded that Plaintiff's ability to ride a bus diminishes her credibility about her difficulty in driving. The ALJ has merely noted where Plaintiff has given contradictory reasons for not driving. In her testimony she cites that she does not drive due to panic attacks; other reports show that Plaintiff reports not driving due to having lost her driver's license. (TR 28, 287). As the ALJ pointed out, Plaintiff reported a history of two DUILs in one week in 1994 and reported in October 2005 that she did not have a driver's license but could request that it be returned and was preparing to request a Driver's License Appeal Hearing. (TR 289, 316).

In addition to pointing out inconsistencies in the record and Plaintiff's testimony, the ALJ also considered other evidence in the record in determining the credibility of the extreme symptoms and limitations which Plaintiff alleges. (TR 28-29). The ALJ considered Plaintiff's treatment and medication. The ALJ pointed out that when Plaintiff has complained of side effects, her medication have been adjusted. (TR 28). The record shows that with medication, Plaintiff's symptoms improve. On October 3, 2005 Plaintiff underwent an intake assessment at Community Mental Health. It was noted that Plaintiff reported that her medication was "most definitely" helping and she could ride comfortably in a car and go places where other people are present. (TR 315). The ALJ pointed out that in October 2007 Plaintiff was reportedly stable on medication and in October 2008 she was again reportedly "doing well" with medication. (TR 28, 226, 320). Sarath Hemachandra, M.D., noted in July, October, November, and December 2007 that Plaintiff's clinical

8

condition was stable and she was to continue her medications. (TR 223-228). Plaintiff testified that her medications help her depression and anxiety, keep her "calmer" and provide stability. (TR 46, 50). In March 2007 Dr. Hemachandra noted Plaintiff's report that her level of functioning in the community was improving. (TR 263). At that time, the doctor noted that Plaintiff's substance abuse continued to be "present & problematic." (TR 263).

  The ALJ also considered Plaintiff's activities of daily living, which he found were not as limited as expected in relation to Plaintiff's complaints. Plaintiff does laundry, prepares simple meals, is able to use public transportation, plays with her dog, attends church and spends time with her sister and her sister's children and helps to clean her sister's house. (TR 42, 101-03, 316). The ALJ also pointed out that Community Mental Health records from 2007 wherein Sylvia Hanson, M.D., reported that Plaintiff was able to attend to her basic needs. (TR 29, 263, 294). The ALJ also pointed out that the record shows that Plaintiff stopped working for reasons other than her impairments. (TR 27). For instance, Plaintiff's treatment provider at Macomb Community Health noted Plaintiff's report that she was fired from numerous jobs due to her alcohol abuse. (TR 316). The ALJ fully explained his credibility determination, considered a range of record evidence and his determination is supported by substantial evidence in the record.

  The ALJ followed the technique set forth in 20 C.F.R. section 404.1520a to evaluate mental impairments and incorporated those findings into his written decision. *See* 20 C.F.R. § 404.1520a(e)(2); (TR 13). The ALJ found that Plaintiff has mild restrictions in activities of daily living, moderate difficulties in social functioning and moderate difficulties in the ability to maintain concentration, persistence and pace with one to two episodes of decompensation of extended duration. (TR 26). The ALJ pointed out that these findings are also consistent with the mental medical consultant Jerry Csokasy, Ph.D.'s August 25, 2007 evaluation. (TR 212). Although the

9

ALJ is not bound by the state agency psychological consultant's findings, he properly considered the findings with the other opinions of record. 20 C.F.R. § 404.1527(f). Dr. Csokasy concluded that the record supported diagnoses of bipolar disorder with psychosis, generalized anxiety disorder, and alcohol dependence. (TR 202-18). Dr. Csokasy concluded that Plaintiff is "retains the ability to perform simple/routine tasks." (TR 218).

Plaintiff argues that the ALJ's RFC and resulting hypothetical question to the VE do not adequately account for the finding that Plaintiff has "moderate" difficulties in maintaining concentration, persistence or pace. (Docket no. 10 p. 14-16). The cases cited by Plaintiff are distinguishable from the instant case. *See Elias v. Comm'r*, 2009 WL 5166200 (E.D. Mich. Dec. 18, 2009)(ALJ's RFC did not include any mental limitations); *Brown v. Comm'r*, 2009 WL 596360 (E.D. Mich. 2009)(hypothetical included mental limitation to only "simple and routine" work); *Ealy v. Comm'r*, 594 F.3d 504, 516-17 (6th Cir. 2010) (hypothetical question to VE contained limitation to simple, repetitive tasks and instruction in non-public work setting yet omitted speed and pace-based restrictions even after ALJ found that claimant had such restrictions). In the instant case, the ALJ included several limitations related to Plaintiff's mental impairments; the ALJ did not simply limit Plaintiff to "simple" or "unskilled" work. (TR 26). Instead, the ALJ limited Plaintiff to unskilled work with routine production and stress, simple job assignments, only occasional contact with the public and little to no changes in the work setting. (TR 26). The ALJ's RFC not only contains a complexity limitation, but the "routine production" limitation provides a pace component to the work, as well as additional limitations on stress, changes and contact with the public.

The ALJ's RFC specifically addresses those moderate limitation identified in Plaintiff's Brief and set forth in the August 2007 Mental Residual Functional Capacity Assessment completed by Dr. Csokasy, including the ability to carry out detailed instructions, the ability to maintain attention

and concentration for extended period, the ability to interact appropriately with the general public and the ability to respond appropriately to changes in the work setting. (Docket no. 10 p.13; TR 216-18). There are no more severe limitations set forth in the record than those of Dr. Csokasy.

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ's RFC is supported by substantial evidence. The ALJ's hypothetical question to the VE incorporated Plaintiff's limitations and the VE's testimony is substantial evidence supporting the ALJ's finding that Plaintiff could perform her past relevant work. The ALJ's decision at step four is based on substantial evidence.

## VI.     CONCLUSION

The Court has considered the record in full and notes that "[i]t is the exceptionally rare case in which 'every piece of evidence points incontrovertibly towards a decision to deny benefits.'" *See Flagg v. Comm'r of Soc. Sec.*, 2002 WL 373466, at *1 (E.D. Mich. Feb. 19, 2002). The ALJ's decision is supported by substantial evidence, it was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket nos. 10, 14) should be DENIED, Defendant's Motion for Summary Judgment (docket nos. 13, 15) should be GRANTED and the instant Complaint DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of*

*Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 14, 2011         s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: April 14, 2011         s/ Lisa C. Bartlett
                              Case Manager